DECISION
Kevin Johnson, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas. Appellant was found guilty of burglary, a violation of R.C. 2911.12.
On March 26, 2000, Theodora Turner contacted the Columbus Police Department concerning an incident that occurred in her apartment. Turner claimed appellant and his sister, Machall Johnson, entered her apartment without her permission and damaged items within her apartment. Officer Dean Worthington of the Columbus Police Department testified during appellant's trial that he was the officer that responded to Turner's call. Upon arriving at Turner's apartment, Officer Worthington described the condition he found as f ollows:
 * * * [W]e found that the rear door to the apartment had been kicked in, forced open. The frame to the door was completely destroyed. The door was still intact on its hinges, but the frame was off * * * where it had been attached to the house or the apartment at one point.
 As you go into the rear door, you go into the kitchen, and there were dishes, broken beer bottles smashed onto the floor. It appeared that food had been thrown about. As you * * * walk through the kitchen to the right is the dining room. We noticed a snow shovel was apparently thrown through the dining room window, and it was laying on the dining room floor. Chairs were overturned in the dining room.
 * * * [W]e noticed a coffee table had been overturned, an aquarium had been thrown to the floor and its contents was * * * spread out on the floor there along with the broken glass from the aquarium.
* * *
 [The upstairs was in] pretty much the same condition as the downstairs. Drawers were opened in the bedrooms. Dressers were overturned. Mattresses were askew off of the bed, and I think there was a shelf of some sort in the hallway that had been tipped over.
Turner claimed appellant and some teenagers caused the damage inside her apartment because they believed Turner's son was involved in a robbery of appellant's girlfriend, Michelle Richardson.
Appellant and Machall were tried together before the trial court. On June 21, 2001, appellant was found guilty of burglary and Machall was found guilty of criminal trespass. Appellant appeals h is conviction and presents the following assignment of error:
 Appellant's conviction was not supported by the evidence in that (1) the evidence was insufficient, (2) the court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29, and (3) conviction was against the manifest weight of the evidence.
Appellant argues in his assignment of error that: (1) the trial court erred when it denied his motion for acquittal pursuant to Crim.R. 29; (2) his conviction was supported by insufficient evidence; and (3) his conviction was against the manifest weight of the evidence. We will address appellant's arguments in the o rder they have been presented.
At the close of the state's presentation of evidence, appellant's counsel made a motion for a judgment of acquittal. Crim.R. 29(A) s tates:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
A trial court's decision to deny a Crim.R. 29(A) motion for acquittal based on the sufficiency of the evidence will be upheld if after viewing the evidence in a light most favorable to the state, the reviewing court finds that any rational factfinder could have found the essential elements of the charge proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421, 430, certiorari denied (1998), 522 U.S. 1128,118 S.Ct. 1078.
Appellant was convicted of burglary, a violation of R.C. 2911.12. R.C. 2911.12(A) states:
 No person, by force, stealth, or deception, shall do any of the following:
* * *
 (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]
In the present case, Turner testified she received a threatening phone call from appellant then saw him drive in front of her apartment in his Ford Mustang followed by Machall in her truck. Turner stated that she ran upstairs and hid behind a shower curtain when she heard someone kick in her back door. She testified she heard things being broken downstairs. Turner also stated she heard appellant come up the stairs and while he was in her upstairs bedroom, he yelled: "Where is this b* * * at? I'm going to kill that b* * *." Turner also testified that appellant was the only person to come upstairs. Turner further testified that after she heard Machall say, "Come on, Kevin. Let's go. Get out the house now" she saw appellant run downstairs. Turner further stated that she did not at any time invite appellant or Machall into her apartment that day. After reviewing the above evidence in a light most favorable to the state, we find that Turner's testimony establishes that appellant, by force, trespassed inside an occupied structure that was Turner's permanent habitation. We also find that this occurred while T urner was present.
Concerning the criminal offense committed while appellant was trespassing inside Turner's apartment, Turner testified that she heard things being thrown and broken while appellant was upstairs. Photographs of Turner's upstairs bedrooms show many items thrown on the floor. The criminal damaging statute states that no person shall knowingly by any means "cause, or create a substantial risk of physical harm to any property of another without the other person's consent." R.C. 2909.06(A). After construing this evidence in a light most favorable to the state, we find that sufficient evidence was presented to show that appellant committed the offense of criminal damaging. Accordingly, we find that sufficient evidence was presented to show that appellant was guilty of burglary. Therefore, the trial court did not err when i t denied appellant's Crim.R. 29 motion.
Appellant also argues that insufficient evidence was presented to sustain his conviction. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113, certiorari denied (1998), 523 U.S. 1125, 118 S.Ct. 1811. "The standard of review for sufficiency of the evidence is the same standard used to review a trial court's decision regarding a motion for acquittal pursuant to Crim.R. 29(A)." State v. Brown (2001), Franklin App. No. 00AP-1364. Since we have already held the trial court did not err in its decision denying appellant's Crim.R. 29 motion for acquittal, we similarly hold that sufficient e vidence was presented to support appellant's conviction.
Appellant also argues that his conviction was against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16, following State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied (1999),525 U.S. 1077, 119 S.Ct. 816. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. Thompkins, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193, c ertiorari denied (1999), 527 U.S. 1042, 119 S.Ct. 2407.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Appellant argues that his conviction was against the manifest weight of the evidence because Turner's testimony was unreliable. However, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. Coley (2001), 93 Ohio St.3d 253,263. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
Since there is little doubt concerning the damage that occurred inside Turner's apartment, the key fact in Turner's testimony is her identification of appellant. Turner testified she saw appellant drive up to her apartment, heard his voice while he was upstairs in her apartment, saw him run down the stairs, and heard Machall say "Come on, Kevin. Let's go. Get out the house now." The record shows that Turner's testimony was supported by the t estimony of Tameca Ellerbe and Dionne Robbins.
Ellerbe testified she saw appellant, Machall, and "three or four other females" running out of Turner's apartment. After seeing them leave the apartment, Ellerbe testified she walked over to Turner's apartment, looked inside the open door and saw "[e]verything's tore up. The house was messed up, so I didn't go in." Ellerbe further testified that after she asked if anyone was home, Turner "came running down her steps with her phone in her hand and hysterical. So I let her come to my house and call the police." Turner testified that she had taken her cordless phone with her when she hid in the bathroom in order to call 911. Turner further testified that she took the batteries out of the phone fearing that if the police called back, the ringing phone w ould have alerted appellant to her location.
Turner's identification of appellant was also supported by the t estimony of Robbins, who stated:
 I was sitting in [Ellerbe's] house; and all of a sudden you start hearing all this banging and everything like that. So I'm thinking that something's happening outside. I go outside on [Ellerbe's] back porch where I can see directly across to [Turner's] house, and you just see windows being busted out, you know, just loud like somebody was getting hurt in the house.
 So, you know, I'm telling [Ellerbe], "Come outside and listen to this because it sounds like somebody's in [Turner's] house." At this time I didn't know if [appellant] was in the house. All I know is Machall Johnson had just pulled up in her truck, walked to the house, walked in the house, and you can hear her, you know, telling [appellant], "Come on, let's go," you know, "Let's get out of here." You can tell her voice is distinctive because it's deep.
 And after that, all that happened, he ran out with a couple of young girls, looked like they were about 16, 17 years old, and jump in the — a car. They came in two cars. I know one was a Mustang * * *. He ran out with no shirt on, jeans, and some tennis shoes. * * *
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's conviction was against the manifest weight of the evidence. See Smith, supra, at 114. The record supports the jury's determination that appellant committed the offense of b urglary.
Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is a ffirmed.
Judgment affirmed.
KLATT and PETREE, JJ., concur.